FILED
John E. Triplett, Acting Clerk
United States District Court

By MGarcia at 12:18 pm, Aug 13, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| RUBEN MENA,<br><br>      Petitioner,<br><br>v.<br><br>WARDEN GARRETT,<br><br>      Respondent. | CIVIL ACTION NO.: 2:19-cv-124 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ruben Mena ("Mena"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed this 28 U.S.C. § 2241 Petition. Doc. 1. Respondent filed a Motion to Dismiss, and Mena filed a Response. Docs. 7, 9. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Mena's Petition based on his failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Mena leave to appeal *in forma pauperis*.

### BACKGROUND

Mena was convicted in the State of Florida in September 1983 of first degree murder, attempted first degree murder with a firearm, two counts of aggravated battery with a firearm, and aggravated assault with a firearm. Doc. 1-1 at 8. He was sentenced to life in prison on the first degree murder conviction and to serve the statutory minimum of 25 years in prison, with his attempt conviction to be served consecutively to his mandatory minimum sentence on the murder

conviction and concurrently with the life sentence on count one. Id. at 11, 13; Doc. 7-1 at 12, 14. Mena was sentenced to 15 years' imprisonment on each battery conviction, to be served concurrently with each other and to his sentence on count one, and to 5 years' imprisonment on the assault conviction, to be served concurrently with his sentence on count one. Doc. 1-1 at 14–15; Doc. 7-1 at 15–16. Mena was sent to federal custody in January 1984, and he "was formally accepted" into the Bureau of Prisons' ("BOP") custody on February 8, 1999, after the State of Florida and the BOP "executed an Intergovernmental Agreement formalizing the terms for housing of inmates, including" Mena. Doc. 7 at 3.

Mena sought compassionate release under the First Step Act, but the BOP denies Mena is a federal prisoner. Doc. 1 at 4, 11. As a result, the Warden at the Jesup facility stated the BOP did not have authority to initiate any request on Mena's behalf under the First Step Act. Id. Mena also initiated requests for relief with the State of Florida Office of Executive Clemency, but that Office responded by stating the Governor of Florida "does not have the authority to commute a federal sentence" and that Mena is "ineligible for the type of clemency you are requesting."[1] Id. at 4, 13. In this Petition, Mena seeks his release from confinement because state and federal authorities deny responsibility for his detention or, alternatively, to have his status defined so he can petition the relevant authority for possible parole, commutation, or the ability to seek relief in federal court. Id. at 7.

## DISCUSSION

In his Petition, Mena challenges the "[v]alidity of his detention [with the BOP] since he has not been convicted of any federal crime." Doc. 1 at 2. Respondent contends Mena failed to exhaust his administrative remedies, as BOP records show Mena has submitted no administrative

---

[1] Mena construes the letters from the Office of Executive Clemency as the State of Florida denying he is serving a state sentence. These letters are attached to Mena's Petition. Doc. 1-1 at 25–28.

2

remedies relating to the authority under which he is incarcerated, and his Petition should be dismissed. Doc. 7 at 5. In addition, Respondent avers the BOP can detain inmates with state convictions under 18 U.S.C. § 5003, and Mena is housed in a federal facility based on an agreement between the BOP and the State of Florida.[2] Id. at 5–6. Respondent also avers Mena's alternative request for a declaration is outside the scope of habeas relief. Id. at 6.

## I. Whether Mena Exhausted His Administrative Remedies

### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475).[3] Failure to exhaust administrative remedies is an affirmative defense, and inmates are

---

[2] "The Director of the Bureau of Prisons when proper and adequate facilities and personnel are available may contract with proper officials of a State or territory, for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or territory." 18 U.S.C. § 5003(a)(1).

[3] The Court notes that, in certain circumstances, it should not determine exhaustion issues. Specifically, in Jenner v. Stone, this Court noted, "Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'" Jenner v. Stone, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), *report and recommendation adopted*, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (quoting Santiago-Lugo, 785 F.3d at 474–75). "However, 'a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." Id. (quoting Santiago-Lugo, 785 F.3d at 475). Here, the Court addresses Respondent's exhaustion argument.

not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust— irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[4]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.    Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

administrative remedies.[5]  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### C.     Analysis of Mena's Efforts at Exhaustion

Respondent states Mena has not submitted any administrative remedies requests with the BOP regarding the authority under which he is incarcerated, and, therefore, his Petition should be dismissed for failure to exhaust administrative remedies.  Doc. 7 at 5.

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et seq*.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP.[6]  § 542.10(b) ("[The Administrative Remedy Program] applies

---

[5]     Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding.  See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

[6]     The BOP's exhaustion requirements apply in this case, even though Mena was convicted and sentenced in the State of Florida, as he is incarcerated in a BOP facility.  Cf. Musgray v. Hancock, No.

6

to all inmates in institutions operated by the Bureau of Prisons . . . ."). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request ("BP-9") within 20 calendar days of the incident giving rise to the grievance. § 542.14(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response. § 542.15(a). If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. Id. Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. Id. An inmate must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.

The evidence before the Court reveals Mena has not completed the administrative remedies process as to his claims regarding his sentence computation. In fact, the evidence reveals Mena did not even begin this process. Doc. 7-1 at 3. Kneyse Martin, a management analyst at the Designation and Sentence Computation Center, declares that Mena did not "file[] any administrative remedies regarding the authority under which he is incarcerated." Id. In support of her declaration, Ms. Martin cites to Mena's administrative remedy information through the SENTRY database. Id. & at 44–45. Indeed, this information reveals Mena had not filed any administrative remedies as of November 20, 2019, the date Ms. Martin executed her

---

4:06cv372, 2007 WL 2986126, at *1–3 (N.D. Fla. Oct. 7, 2007) (noting an inmate sentenced in federal court but serving sentence in a Florida state facility under an intergovernmental agreement should exhaust the Florida Department of Corrections' administrative remedies, not the BOP's).

declaration. Id. Indeed, Mena does not contend that he pursued his administrative remedies. Doc. 9.

The only evidence before the Court regarding Mena's attempts at exhaustion reveals that Mena has not completed the administrative remedies request process regarding the claims he raises in his Petition. There is no evidence Mena pursued this process before he filed his Petition on October 16, 2019, doc. 1, or otherwise pursued the process through to its completion. Bryant, 530 F.3d at 1378 (noting all steps in the administrative remedies process must be completed before a party files a cause of action with a court). The Court notes Mena's argument that exhaustion would be futile because "the BOP will clearly continue to allege it has jurisdiction to incarcerate petitioner . . . and will reject petitioner's constitutional claim." Doc. 9 at 6. However, Mena's argument fails as a matter of law.[7] Musgray v. Hancock, No. 4:06cv372, 2007 WL 2986126, at *2–3 (N.D. Fla. Oct. 7, 2007) (observing petitioner did not carry his burden on a futility argument even where the outcome of the administrative remedies process was already known). Consequently, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Mena's claims based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition.[8]

It is unnecessary to address the remaining grounds of Respondent's Motion. Holdago v. United States, Civil Action No.: 5:19-cv-9, 2019 WL 5681217, at *3 (S.D. Ga. Oct. 31, 2019) (finding it unnecessary to address alternative grounds in motion for dismissal where petitioner

---

[7] Moreover, it is not clear to the Court that pursuing administrative remedies would be factually futile. The State of Florida's Office of Executive Clemency and the BOP have taken inconsistent positions. Utilizing the BOP's administrative remedy process may help resolve the inconsistency.

[8] To the extent Mena should pursue remedies through the State of Florida, he must still exhaust his state remedies. 28 U.S.C. § 2254(b)(1), (c). Indeed, Mena seems to recognize this, as he asserts he filed a State of Florida "procedural rule § 3.850 motion" but has not received a response. Doc. 9 at 2.

failed to exhaust his available administrative remedies), *adopted by* 2019 WL 6353869 (S.D. Ga. Nov. 26, 2019).

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Mena leave to appeal *in forma pauperis*. Though Mena has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Mena's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Mena *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Mena's Petition based on his failure to exhaust his

administrative remedies.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Mena leave to appeal *in forma pauperis*.

The Court directs any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.

**SO REPORTED and RECOMMENDED**, this 13th day of August, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA